Tony QUINONES, Plaintiff,

v.

CITY OF EVANSTON, and Evanston Firefighters Pension Fund, Defendants.

No. 91 C 3291.

United States District Court, N.D. Illinois, E.D.

July 21, 1993.

Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, IL, for plaintiff.

Jack M. Siegel, Altheimer & Gray, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Tony Quinones was hired as a firefighter by the City of Evanston (the "City" or "Evanston") in 1989, but was twice refused admission into the Evanston Firefighters Pension Fund (the "Fund"). Quinones filed suit against the City and the Fund, claiming this denial of pension benefits was based on his age, and thus, contrary to the federal Age Discrimination in Employment Act as codified in 29 U.S.C. § 623. This matter is before us upon cross motions for summary judgment. For the reasons stated below, we deny both motions.

### Background

The following facts are undisputed. Plaintiff, Jose Quinones was born on September 28, 1950. (Pl.'s Local Rule 12(M) Stmt. ¶ 5.) In the spring of 1985, when Plaintiff was thirty-four years of age, he applied to the City of Evanston for a position as a firefighter/paramedic. (Pl.'s Local Rule 12(M) Stmt. ¶ 5.) The City placed Quinones' name on a list of eligible candidates in July 1986. In June 1989, the City extended him an offer of employment and sent Plaintiff a letter regarding the legal problems concerning the availability of pension benefits. (Pl.'s Local Rule 12(M) Stmt. ¶ 6, 8.) Besides explaining the state imposed restrictions, this letter also opined that the age restrictions were discriminatory and in conflict with federal law, and that they might soon be amended. Plaintiff accepted the offer and began work on October 5, 1989, when he was thirty-nine years of age. (Pl.'s Local Rule 12(M) Stmt. ¶ 9.) Since his hiring, Plaintiff has been employed by Evanston as a firefighter/paramedic.

After being hired, Plaintiff was denied pension coverage on two separate occasions. On December 6, 1989, the Board of Trustees of the Evanston Firefighters Pension Fund, citing Plaintiff's age, concluded that Plaintiff was ineligible for coverage under Section 4–107 of the Illinois Pension Code. (Pl.'s Local Rule 12(M) Stmt. ¶ 6, 8; 40 I.L.C.S. ch. 5–4/101 et seq.) Plaintiff reapplied for membership in October 1992, after the effective

date of the Older Workers Benefit Protection Act (the OWBPA.) (Pl.'s Local Rule 12(M) Stmt. ¶ 12.) The Board again refused to admit Quinones on the basis of Section 4–107(b) for three reasons: (1) failure to apply for membership within three months of his initial appointment; (2) failure to litigate the matter within thirty days of rejection; and (3) failure to meet the thirty-five year age limitation. (Def.'s Local Rule Stmt. in Supp. of its Mot. for Summ. J. ¶ 2.)

The Evanston City Council created the firefighters pension fund pursuant to the Illinois Pension Code. It is administered by the Evanston Firefighters Pension Fund strictly according to state statutes. Following an admission decision of the Fund, Evanston is required by Illinois law to contribute. State law prohibits municipalities from providing benefits other than as set forth by statute. 40 I.L.C.S. ch. 5–4/142.

### Legislative History

Congress enacted the original Age Discrimination in Employment Act (ADEA) in 1967 to prevent discrimination based on age in such matters as hiring, job retention, compensation and other terms of employment. The ADEA protects workers who are at least forty years old from discrimination by employers of twenty or more people.

In drafting the ADEA, Congress was concerned that requiring employers to treat all workers alike in terms of benefit plans regardless of age would have an adverse affect on decisions to hire older workers. The drafters felt that encouraging hiring of older workers should predominate over insuring that older workers had absolutely equal benefits. Therefore, section 4(f)(2) of the Act created an exemption that allowed lower benefits for older workers in plans that were not "a subterfuge to evade the purposes" of the Act.

The scope of the "subterfuge" exception has been the subject of much disagreement. The Department of Labor, initially given responsibility for enforcing the Act, and later the EEOC, which took over, suggested that a "subterfuge" should include any plan which could not rationalize unequal benefit payments with age-based cost considerations.

See, e.g., 29 C.F.R. § 860.120(a) (1970) (proof of adequate cost-considerations was sufficient, although not necessary, to qualify for the exemption). The administrative interpretation of "subterfuge" has remained focused on an economic basis for discrimination to this day. The current regulation defines "subterfuge" as a discriminatory benefit plan not justified by age-related cost considerations. See 29 C.F.R. § 1625.10(d) (1992).

Several circuit courts also adopted the cost justification interpretation of "subterfuge." See e.g., EEOC v. Mt. Lebanon, 842 F.2d 1480, 1489 (3d Cir.1988); Cipriano v. Board of Educ. of North Tonawanda School Dist., 785 F.2d 51, 57–58 (2d Cir.1986). However, the Supreme Court took up the matter in Ohio Pub. Employees Retirement System v. Betts, 492 U.S. 158, 188, 109 S.Ct. 2854, 2872, 106 L.Ed.2d 134 (1989) (Marshall, J., dissenting). In Betts, the Court invalidated section 1625.10's cost-consideration definition of "subterfuge" as not justified by the plain terms of the ADEA, and developed its own definition. Betts held that a benefit plan with lower benefits for older workers is subterfuge only if it was created with the intent to evade the forbidden discrimination in pay or hiring practices specifically outlined in Section 4(a). Betts, 492 U.S. at 180, 109 S.Ct. at 2867. In effect, this ruling removed most discriminatory pension benefits from the reach of the ADEA.

Congress was not pleased, and in response enacted the Older Workers Benefit Protection Act, Pub.L. 101–433 (1990). The Act overruled Betts and reinstated the original cost consideration analysis of a "subterfuge," as set out in section 1625.10 of the regulations with respect to employee benefits. See 29 U.S.C. § 623(f)(2)(B)(i). The provisions of the amendment became effective against state and local governments as of October 16, 1992.

### Discussion

For a party to prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, [must] show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this stage, we do not weigh evidence or determine the truth of asserted matters. We simply determine whether there is a genuine issue for trial, i.e., "whether a proper jury question was presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When the nonmoving party is faced with a properly supported motion for summary judgment, it may not avoid judgment by resting on its pleadings. If the nonmoving party bears the burden of proof at trial on a dispositive issue, it is required to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' [to] designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), (quoting Fed.R.Civ.P. 56(e)).

Plaintiff argues that the decision of the Fund in October 1992 to deny pension coverage and the subsequent failure of the City to make contributions, violated the ADEA as amended by the OWBPA. The relevant portion of the statute prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The definitions for the chapter instruct us that this listing encompasses benefit plans. 29 U.S.C. § 630(l).

In our case there is no question that age was a substantial factor in refusing Quinones pension benefits. Both parties agree that the Fund denied Quinones coverage in December 1989, solely because of his age, that since that time he has remained without coverage because of this initial age-based decision, and that his reapplication in October 1992 was turned down in part, again due to age. We will consider each of the proffered defenses in turn.

## I. Correct Defendants

As an initial matter, we consider the arguments of both Defendants that they are im-properly named in this lawsuit. The City claims it did not discriminate and the Fund claims it is not an employer. We will deal with each Defendant in turn.

■ The City argues that the ADEA does not apply to it because it took no discriminatory action against Plaintiff. They point out that the decision not to contribute funds on behalf of Quinones pension was not discretionary, but compelled by Illinois law, which required Evanston to follow the direction of the Fund. We reject this contention.

The City has cited no authority for the proposition that it is insulated from liability for action that violates the ADEA if that action is taken pursuant to the requirements of state law. Surprisingly, there is little authority on this issue.

Certainly, a state statute the contravenes federal law cannot stand under the Supremacy Clause. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525–26, 97 S.Ct. 1305, 1309–10, 51 L.Ed.2d 604 (1977). Concomitantly, a political subdivision of a state is not shielded from liability for employment discrimination in violation of the ADEA merely because its actions were mandated by contrary state law. *See E.E.O.C. v. County of Allegheny*, 705 F.2d 679, 682 (3d Cir.1983) (county could not rely on state statute as basis for refusing to allow individuals over 35 years old to take police examination) (citations omitted). *See also Kober v. Westinghouse Elec. Corp.*, 480 F.2d 240, 245–46 (3d Cir.1973) (collecting cases for proposition that reliance on state statute contrary to Title VII constitutes intentional unfair employment practices); *Williams v. General Foods*, 492 F.2d 399, 407–08 (7th Cir.1974) (reliance on state law in Title VII setting); *Rosenfeld v. Southern Pacific Co.*, 444 F.2d 1219, 1227 (9th Cir. 1971) (state requirement did not excuse company's discriminatory policy); *Davis v. City of Camden*, 657 F.Supp. 396, 402–04 (D.N.J. 1987) (collecting cases in related areas). Though this puts political subdivisions in a rather tight spot, it is preferable to the alternative, which would deprive an innocent discrimination victim of a remedy.[1]

---

1. The City's reliance on the state statute may indeed be relevant to damages, however. We do not reach that issue.

As to the Fund's argument that it is not an "employer" under the definition of the statute because it is not an agency or instrumentality of the City, we find the more relevant argument elsewhere. The question of a state entity's amenability to suit is governed by state law. Fed.R.Civ.P. 17(b). Under Illinois law, the Pension Fund is not an individual or municipal corporation, but merely an aggregation of assets. There is no provision for the Fund to sue or be sued. *See* 40 I.L.C.S. ch. 5/4–101 *et seq.* One can no more sue the Pension Fund for a violation of the ADEA than he can sue a bank account or a trust. Therefor, we hold that the Firefighters' Pension Fund is not a suable entity. The Fund's Motion is denied. However, we dismiss all claims against the Fund *sua sponte* with prejudice. *See McCann v. City of Chicago,* No. 89 C 2879, 1990 WL 70415 (N.D.Ill. filed May 3, 1990) (Grady, C.J.) (Policeman's Annuity and Benefit Fund not amenable to suit under ADEA).[2]

## II.  *The 623(f)(2) Exception*

As we noted above, the ADEA makes it "unlawful ... to ... discriminate against any individual with respect to ... terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). Clearly, the plain terms of section 623 are violated by refusing to admit an employee to a pension fund on the basis of his age. *See Crosland v. Charlotte Eye, Ear and Throat Hosp.,* 686 F.2d 208, 214 (4th Cir.1982).

However, the "subterfuge" exception to section 623 allows age-based discrimination with respect to employee benefit plans where there are sufficient economic reasons to do so. *See* 29 U.S.C. § 623(f)(2)(B)(i) (*citing* 29 C.F.R. § 1625.10). As discussed above, the OWBPA restored the original "cost consideration" analysis favored in the regulations and by several Circuits prior to *Betts.* Therefor, an employer who discriminates in the terms of employment on the

basis of age must demonstrate significant cost-based reason for doing so. An employer acting under this exemption bears the burden of proving the validity of any cost differences. *Id.*

Despite the presence of other arguments, this issue is really the nucleus of this case. Under the ADEA as amended by the OWBPA, whether Quinones must be admitted to the pension fund revolves around the economic justifications for denying his application.

Despite the crucial nature of this issue and the best efforts of this court to point the parties towards it, the City has made no substantial attempt to demonstrate that denying Quinones pension benefits is justified by substantial cost considerations. Even when this court sent the matter back for additional briefing on the requirements of the cost consideration guidelines adopted by the OWBPA, 29 C.F.R. § 1625.10, the Defendants declined to squarely address the issue, claiming that the "subterfuge" exception does not apply here.

We can only say that we are mystified by the parties' inability to address the central issue in this case. Certainly, where we have no facts on which to base a determination whether the exclusion of Quinones from the plan was justified under section 623(f)(2), we will decline to grant summary judgment. We do so despite the fact that the burden of proof on this issue belongs to the Defendant: the Plaintiff still must demonstrate that there are no genuine issues of material fact. *Cf. Crosland,* 686 F.2d at 210 (summary judgment inappropriate on cost justification even where substantial evidence presented by defendant on the issue). We hold that there are genuine issues of material fact as to whether the exclusion of the plaintiff from the fund was based on significant cost considerations.

In a case such as the present one, where more than the parties' limited interests are involved, we are unusually cautious. We will

---

**2.** Neither party seems to have any indication who the proper Defendants are in this case and neither has cited any authority on the issue. While it is clear that the Fund is not a suable entity under Illinois law, we note, without deciding, that the Board of Trustees may the proper Defendant.

not declare a long-standing Illinois law in violation of the ADEA without some competent effort made to defend it: we simply have no idea if the 35 year age limit is "motivated by a legitimate business or economic purpose which, objectively assessed, reasonably justifies it," *Crosland*, 686 F.2d at 215, under the standards set out in the regulations. Until we have such an idea, we will not issue a judgment that invalidates the law.

Of course, the Defendant will eventually be forced to meet its burden at trial. Unfortunately, the opportunity to avoid the time and expense that a trial will undoubtedly consume may have been squandered.

### III. *Bona Fide Occupational Qualification*

■ Although it is unclear, Evanston seems to argue that withholding pension benefits is allowable because age is a bona fide occupational qualification (BFOQ). Presumably, the City relies on § 623(f)(1), which allows an organization "to take any action otherwise prohibited ... where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." 29 U.S.C. § 623(f)(1).

■ It is difficult to imagine that this provision was meant to cover decisions involving benefits. Indeed, every one of the cases Evanston cites for its proposition involves the use of the age BFOQ with regard to hiring and discharge situations. An occupational qualification, by definition, is an endowment or acquirement that fits a person to a certain *employment*. Defendant's interpretation of the exemption rests at bottom on the odd understanding that younger firefighters are somehow more qualified to receive benefits than older ones.

Even if the § 623(f)(1) provision is applicable to benefit decisions, Defendant's own conduct has not been consistent with the claim that age is a BFOQ necessary to the normal operation of a fire station. Evanston found Quinones occupationally qualified in 1989 when it hired him and throughout his several years of service. It is disingenuous to argue that he is occupationally qualified for hiring purpose, but not for benefit purposes. More-

over, Defendants admit that they would have allowed Quinones into the Fund in accordance with state law if only the City of Evanston had a population greater than 500,-000. Plaintiff's age does not appear to have been a bona fide and necessary occupational qualification. We thus reject this argument.

### IV. *The Firefighter Exception*

■ The City contends that it may discriminate against Plaintiff with regard to pension benefits on the basis of age because the ADEA excludes firefighters from its protection. The pertinent exclusion clause provides that it will not be unlawful for cities to "fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken ... with respect to the employment of an individual as a firefighter." 29 U.S.C. § 623(j).

This provision was meant to allow states to use age as a proxy for determining the physical and mental reliability of public safety employees. The concern was that local governments were so overwhelmed with the cost of defending age-based hiring and retirement decisions on the basis of the bona fide occupational qualification exception that Congress feared municipalities might completely abandon these policies, and thus risk public safety. House Committee on Education and Labor, Age Discrimination Act of 1986, H.Rep. No. 756, 99th Cong., 2nd Sess. 16–17 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5628, 5640–42.

Defendants argue that because the law does not require Evanston to hire older firefighters, the ADEA should not be read to penalize the city when it nevertheless chooses to hire an older worker in furtherance of the purposes that gave rise to the Act. We reject this contention for three reasons. First, we note the language of the provision explicitly exempts only hiring and discharge decisions, and there is no allowance for discrimination with regard to pension benefits.

■ Second, Evanston's interpretation misapprehends the purpose of the firefighter exception. The firefighter provision was passed to ease the burden on local governments, but only in order to ensure public

safety. It is absurd to think that public safety is enhanced in any way simply by reducing the pension coverage of a firefighter, who in any case would perform the same duties. Because the City of Evanston is satisfied that Quinones is qualified to be a firefighter despite his age, Defendants cannot and do not claim that he poses a risk to public safety by virtue of any age-based physical and mental impairments.

Third, Evanston's arguments misconstrues congressional intent in passing the ADEA. Certainly, Congress understood that outlawing all discrimination on the basis of age could have an adverse impact on decisions to hire older workers. Indeed, Congress intended the Act to further hiring older workers even at the expense of lower benefits. *See* Remarks of Sen. Javits, Hearings on S. 830 before the Subcommittee on Labor and Public Welfare, 90th Cong., 1st Sess. 27 (1967) ("the age discrimination law should not be used to fight the pension battle but ... we ought to subordinate the importance of adequate pension benefits for older workers in favor of employment of such older workers...."") To address that concern, the ADEA allows discrimination in benefits, but only in the limited circumstances we discussed above. *See Crosland*, 686 F.2d 208, 214 (citing legislative history and case law). Thus, there can be no blanket justification for that discrimination, even in the case of public safety employees, absent a showing of cost considerations. 29 C.F.R. § 1625.10. It could not be the goal of an age discrimination law to create two classes of firefighters on the basis of age, and then to sanctify discrimination against the group of older members without justification merely because they are firefighters.

Because the Defendants' interpretation of the firefighter provision does not square with the language or intent of the legislature, we reject it, and find as a matter of law that the exception is not applicable in this case.

### V. *Estoppel Defense*

█ The City argues that Quinones is estopped from bringing suit with regard to

his denial of benefits because he accepted his position knowing that he would not be eligible, and thus caused Defendants to rely on his consent to forgo pension coverage. We also reject this argument.

The evidence does not show that Quinones knew he would not qualify for the benefit plan, only that he might not. Though the City sent him a letter telling him he could not be covered under current law, it also elaborated on Evanston's belief that the age limit violates federal law and that it was likely to be overturned in the near future. Thus, the City of Evanston planted the very seed that probably led to this lawsuit. To claim estoppel under those circumstances is absurd. We reject Evanston's estoppel defense.

### VI. *Exhaustion of State Remedies*

█ Evanston also claims that Plaintiff's suit must be dismissed for failure to exhaust the state remedies with the Illinois Human Rights Commission (IHRC). This argument is frivolous. The ADEA does provide that no suit may be brought to the EEOC until after the state proceedings have been terminated or sixty days have expired from the commencement of the proceedings. 29 U.S.C. § 633(b). However, the IHRC has a workshare agreement with the EEOC, which allows petitioners to bypass the state proceedings. The Seventh Circuit has directed that in such cases the filing with the EEOC provides "both initiation and termination of the state's interests pursuant to a prearranged waiver." *Kaimowitz v. Board of Trustees of Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir.1991) (dismissal of ADEA suit overturned where workshare agreement existed). Following *Kaimowitz*, we find Plaintiff has fulfilled the requirements of § 633(b) and reject Defendants arguments for dismissal.

### *Conclusion*

For the reasons stated above, the Plaintiff's Motion for Summary Judgment is denied.[3] Defendant Fund's Motion is denied,

---

3. One last issue occupies us. Plaintiff's prayer for relief seeks "such prospective injunctive relief

as may be required to require defendants to provide plaintiff with full retroactive pension and

but we dismiss the Fund from this case *sua sponte* and with prejudice because it is not a suable entity under any theory.[4] Defendant City's Motion to Dismiss is denied.[5]

disability benefits...." Third Amended Complaint at 3. How prospective injunctive relief can assure retroactive relief is, quite frankly, beyond this court's imagination. However, the Defendants have not challenged this, and its resolution must be left for another day.

4. Quinones, who has shown a remarkable penchant for refiling claims against parties where earlier claims had been dismissed with prejudice, is cautioned against any further alchemy with

respect to the Fund. It is not suable under any theory.

5. This motion is yet another symptom of how odd these proceedings have been. It has never been formally noticed and no briefing has been ordered. However, none is required because it essentially responds to the Plaintiff's arguments in his motion for summary judgment. We have treated it as part and parcel of the papers dealt with in this opinion.