Tony QUINONES, Plaintiff–Appellee,
Cross–Appellant,

v.

CITY OF EVANSTON, ILLINOIS,
Defendant–Appellant, Cross–
Appellee.

Nos. 94–3060, 94–3206.

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1995.

Decided June 12, 1995.

---

Kenneth N. Flaxman (argued) and Leslie A. Redman, Chicago, IL, for plaintiff.

Jack M. Siegel (argued), Altheimer & Gray, Chicago, IL, William W. Kurnik, Kurnik, Cipolla & Barasha, Arlington Heights, IL, and Thomas F. McGuire, Long Grove, IL, for defendants.

Gwendolyn Young Reams, Carolyn L. Wheeler, James R. Neely, Jr., and Gail S. Coleman (argued), E.E.O.C., Office of Gen. Counsel, Washington, DC, for amicus curiae.

Before RONEY,* BAUER, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Until 1993 an exception to the Age Discrimination in Employment Act (ADEA) permitted state and local governments to set a maximum age at which they would hire firefighters. 29 U.S.C. § 623(j) (repealed effective December 31, 1993), 630(j). Evanston,

* Hon. Paul H. Roney, of the Eleventh Circuit, sitting by designation.

8277

Illinois, elected not to use that privilege, and in 1989 it hired Tony Quinones, then 39, as a paramedic in its fire department. Other employees of the department receive pensions when they retire; Quinones will not, because Evanston does not make pension contributions for firefighters 35 or older when hired. When extending the offer of employment, Evanston told Quinones that he is ineligible for a pension but added that in its view this rule conflicts with federal law and was likely to be amended. Six years have passed without the anticipated amendment, and Evanston is vigorously contesting this suit, which ended in an order compelling Evanston to fund a pension for Quinones. 1994 WL 405963, 1994 U.S. Dist. LEXIS 10398; see also 829 F.Supp. 237 (N.D.Ill.1993). The court also directed the Evanston Firefighters Pension Fund to pay Quinones a pension when he retires. The Fund has accepted the judgment, but the City denies that it has any obligation to compensate the Fund for Quinones's pension.

The case was long delayed while the district court addressed the City's principal defense: "Don't Blame *Me!*" (better, "Don't *Sue* Me!"). See 1991 WL 247736, 1991 U.S. Dist. LEXIS 16368, 1992 WL 168952, 1992 U.S. Dist. LEXIS 10317. The limitation on eligibility for pensions is part of state law, 40 ILCS 5/4–107(b), and Evanston insists that the State of Illinois is a necessary party, if not the only proper party. Because the eleventh amendment prevents Quinones from naming the state as a party, Evanston believes that it is off the hook.[†] As we remarked in *Mueller v. Reich*, 54 F.3d 438, 440–41 (7th Cir.1995), an argument of this stripe reflects a serious misunderstanding. A person aggrieved by the application of a legal rule does not sue the rule *maker* — Congress, the President, the United States, a state, a state's legislature, the judge who announced the principle of common law. He sues the person whose acts hurt him. If Buyer and Seller have a dispute that is governed by the Uniform Commercial Code, Buyer does not sue the state that enacted the UCC; Buyer sues Seller, which may justify its conduct by appealing to the UCC. If Bank believes that a statute administered by the Federal Reserve is constitutionally invalid, Bank sues the person claiming rights under the statute (or, conceivably, the Fed, if it has taken adverse action based on the statute); Bank does not sue Congress. Every day courts consider the validity and application of statutes in cases between private parties; that is why 28 U.S.C. § 2403 and Fed.R.Civ.P. 24(c) provide for notice to state and federal governments, so that they may intervene or appear as *amici curiae* to defend their handiwork. At oral argument we inquired why, on Evanston's view, *Brown v. Board of Education of Topeka, Kansas,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), was not captioned *Brown v. State of Kansas* —for state rather than local law required segregation of the races. Evanston had no answer other than to say that *Brown* involved schools, which is true but irrelevant to the identification of the proper defendant when a city carries out a state law.

Evanston has been told by the State of Illinois that it may not provide pensions to firefighters hired after age 34; it has been told by the United States of America to treat these employees no worse than those hired when younger. Evanston believes that it is compelled to follow the directive from the state, but the Supremacy Clause of the Constitution requires a different order of priority. A discriminatory state law is not a *defense* to liability under federal law; it is a *source* of liability under federal law. *Williams v. General Foods Corp.,* 492 F.2d 399, 404 (7th Cir.1974). Evanston is right to observe that it cannot provide Quinones with a pension unless the Pension Fund cooperates. Only the Fund pays pension benefits; municipalities remit to the Fund. That the Fund actually writes the pension checks no

---

[†] The EEOC has filed suit against the state, contending that the ADEA preempts 40 ILCS 5/4–107(b). A district court dismissed that suit after concluding that the only proper party is the employing municipality. *EEOC v. Illinois,* No. 94–3003 (C.D.Ill. May 17, 1994). But see *EEOC v. Illinois,* 986 F.2d 187 (7th Cir.1993). Submission of the EEOC's appeal, No. 94–2700, has been deferred pending the resolution of Evanston's case. Another suit by the EEOC names both city and state as defendants. A district court denied the state's motion for summary judgment, *EEOC v. Evanston & Illinois,* 854 F.Supp. 534 (N.D.Ill.1994), but has not entered a final decision.

more insulates Evanston from liability than would the presence of any other financial intermediary. If an insurer handled the payments, the City could not on that account escape responsibility for making lower contributions on behalf of older workers. *Arizona Governing Committee for Tax Deferred Annuity v. Norris,* 463 U.S. 1073, 1089–91, 103 S.Ct. 3492, 3501–03, 77 L.Ed.2d 1236 (1983). But the Fund's role does make it a necessary party to the case. Quinones sued the Fund, which accepted the district court's judgment and stands ready to pay. Evanston need not fear that the Fund will return its contributions or take its money without providing benefits to Quinones. Nothing could be gained by adding Illinois as a party; a judgment against Evanston and the Fund gives Quinones and Evanston everything to which they are entitled.

■ Apparently the source of the City's confusion is a series of cases under 42 U.S.C. § 1983. According to *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that law makes a city answerable for its own policies alone; it may not be held vicariously liable for the decisions of others. What happens when a municipal employee carries out a policy established by state law? Does the city have a "policy of following state law," making it liable for its employees' actions (if state law happens to violate federal statutes or the Constitution)? Or does liability fall on the employee personally, on the ground that the municipality is not the author of the policy the employee implements? We have reached the latter conclusion. E.g., *Surplus Store & Exchange, Inc. v. Delphi,* 928 F.2d 788 (7th Cir.1991); cf. *Strauss v. Chicago,* 760 F.2d 765 (7th Cir.1985). Under the ADEA, however, a municipality is vicariously liable. If some rogue supervisor refuses to hire persons protected by the ADEA, or gives them lower salaries, the municipality—the "employer" under the Act—is liable even if the supervisor acted in the teeth of the city's policy. Evanston employs Quinones, who is entitled to certain benefits under the ADEA. That Evanston did not make the policy that denies him those benefits is irrelevant; and if as Evanston believes it is forbidden by state law to operate its fire department in compli-ance with the ADEA (because state law denies it the option to abolish pensions for all workers or to provide for pensions outside the aegis of the Pension Fund, see 40 ILCS 5/4–142), then it had better disestablish its fire department. That, at least, would put it in compliance with both state and federal law. As we have stressed, however, no state may require a municipality to violate federal law. Evanston has a fire department; it hired Quinones; the question is how the ADEA requires Evanston to treat him. If as in *Dalton v. Mercer County,* 887 F.2d 490 (4th Cir.1989), the state law establishes the kind of pension system that the ADEA tolerates, then Evanston is entitled to apply the state law; if not, not.

■ The ADEA's toleration of an age cutoff for hiring firefighters does not extend to age-based pay differences among persons a city elects to hire, and a lower pension is equivalent to a lower salary for the same work. Until its repeal, § 623(j) permitted states and their subdivisions to apply to firefighters maximum-hiring-age cutoffs. It did not authorize disparate treatment of persons a city elected to hire. A pension is a form of deferred compensation, and the ADEA prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age". 29 U.S.C. § 623(a). Congress added in 1990 that "[t]he term 'compensation, terms, conditions, or privileges of employment' encompasses all employee benefits, including such benefits provided pursuant to a bona fide employee benefit plan." 29 U.S.C. § 630(*l*), added by the Older Workers Benefits Protection Act, 104 Stat. 978 (1990), effective for municipalities on October 16, 1992, 104 Stat. 981. The 1990 amendment altered the course set by *Ohio Public Employees Retirement System v. Betts,* 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989), which held that employers could enforce the terms of a pension plan—even terms reducing benefits on account of age—unless the plan was a "subterfuge" to avoid the Act. The 1990 amendment preserves employers' right to distinguish among employees by the years of service, even though years of service are

related to age, and to set a minimum age for the receipt of pension benefits. 29 U.S.C. § 623(i)(2), (*l*)(1)(A). But it places a burden on employers that distinguish among employees with the same number of years of service; the employer must show a cost justification. 29 U.S.C. § 623(f)(2)(B)(i).

Evanston believes that it has one. The city has a defined-benefit plan, under which the pension is some percentage of the terminal wage, times the number of years worked. Let us suppose that a firefighter receives as his pension 2% of his salary from the final year, times the number of years of employment. (This is not Evanston's formula; we use it only to provide a simple illustration.) Suppose the average firefighter joins the fire department at age 25, works 20 years, quits to take another job, and begins drawing pension benefits at age 65 (or actuarially reduced pension benefits at a younger age; this possibility need not detain us). The annual pension will be 40% of the employee's terminal salary. Pension contributions from this employee's first year earn 40 years of interest before the employee draws benefits; even contributions from the final year earn 20 years of interest. The average contribution earns interest for 30 years. Compare the situation of an employee who starts at 45, works 20 years, and retires with immediate pension. This employee's pension contribution earns interest for only 10 years on average, and therefore the annual contribution must be higher to support the same annual pension. The employee who draws a pension immediately also deprives the employer of the benefits of inflation. The terminal salary (and therefore the pension benefit) of an employee who retires at age 65 in 2015 after 20 years of work and draws a pension immediately will be higher than the terminal salary of an employee who quit in 1995 after 20 years and begins to draw a pension in 2015, and therefore the first employee will be entitled to a higher annual pension.

■ Considerations of this character show that defined-benefit pensions cost the employer more, per dollar of annual pension, the older the employee on the date of hire. They do not, however, permit an employer to respond by giving the older employee zero.

That would open a cost difference the other way around, with the younger employee receiving the higher effective wage. The ADEA allows an employer to observe the terms of a pension plan under which "the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker". 29 U.S.C. § 623(f)(2)(B)(i). If Quinones is ineligible for a pension, both his benefit and Evanston's cost are less than those for younger workers; the City is unambiguously out of compliance with the law. What the City may do is reduce the pension of workers hired later in life so that the annual outlay during years of employment is the same for all workers. A defined-contribution plan does this automatically. Under a defined-contribution plan, the employer contributes to a separate account for each worker. An employee who works under a defined-contribution plan between the ages of 25 and 45 will have more in the account at age 65 and receive a higher annual pension than an employee who works between the ages of 45 and 65. Because this difference does not violate the ADEA (recall that the employer contributes to the account an identical percentage of salary for both workers), it would make no sense to say that an equivalent adjustment to a defined-benefit plan violates the Act. And the EEOC has reached this conclusion. Its regulations permit the employer to reduce the pensions for workers who begin service at older ages, but only "to the extent necessary to achieve approximate equivalency in cost for older and younger workers." 29 C.F.R. § 1625.10(a)(1). (Approximate, not exact, equivalency; all defined-benefit plans transfer wealth among employees to some degree.) Evanston, which proposes to pay Quinones a pension of $0, has not taken advantage of this opportunity. Under Illinois law, it can't; Illinois created and requires cities to join a defined-benefit plan that provides equal pensions for equal years of work, without adjustment for age at the time of hire. Evanston has the state rather than the ADEA to blame for this. We need not decide what would happen if workers hired at younger ages complained that municipalities pay older workers more (the same stated

salary, but higher implicit pension contributions). All we need hold is that 40 ILCS 5/4–107(b) conflicts with the ADEA, and under the Supremacy Clause neither Evanston nor any other governmental body may follow it. The kind of adjustments a pension fund may (or must) make is a subject for another day.

■ Two other issues require brief comment. First, the fact that the 1990 amendment is prospective is not helpful to Evanston. The City has not been required to make pension contributions for any period before October 1992; the Fund has been left to bear that cost, and it has not appealed. Second, Quinones hasn't a prayer on his claim under 42 U.S.C. § 1983 based on the lack of pension contributions before October 1992. Age discrimination is constitutionally permissible. *Gregory v. Ashcroft,* 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991); *Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Anyway, because Quinones will receive a full pension as a result of his victory under the ADEA, he is not aggrieved by the allocation of the expense between the City and the Fund.

AFFIRMED.