**Clara LEE, Plaintiff,**

**v.**

**CITY OF HARTFORD/HARTFORD PUBLIC SCHOOLS and Anthony Amato, Defendants.**

**No. CIV. 3:02CV819(PCD).**

United States District Court, D. Connecticut.

March 31, 2003.

Opinion Adhered to on Reconsideration May 22, 2003.

Judith D. Meyer, Rebecca M. Vicente, Avon, CT, for Plaintiff.

Joseph W. McQuade, Kainen, Escalera & McHale, PC, Hartford, CT, for Defendants.

### RULING ON DEFENDANTS' MOTION TO DISMISS

DORSEY, District Judge.

Defendants move to dismiss the complaint. For the reasons set forth herein, the motion is granted in part.

## I. BACKGROUND

The following facts are taken as true from the allegations in the present complaint. Plaintiff is employed by defendant City of Hartford/Hartford Public Schools ("HPS"). Defendant Anthony Amato is employed by HPS as the Superintendent of Schools.

Plaintiff served as vice principal of Weaver High School from fall, 1994 through August, 1999. In August, 1997, HPS hired Christine Mahoney as principal of Weaver, thus making her plaintiff's direct supervisor. Mahoney allegedly took a number of actions adversely affecting plaintiff, including interfering with plaintiff's positive relationships with others in the school and school community, assigning tasks to plaintiff not befitting her position, refusing to afford plaintiff training opportunities, reducing plaintiff's support staff, issuing negative performance evaluations for plaintiff in the 1997–1998 and 1998–1999 school years, and commenting that plaintiff's advanced age might be affecting her abilities.

On February 10, 1999, plaintiff filed a discrimination complaint with the human resources department in which she alleged that Mahoney's mistreatment of her was motivated by age discrimination or irrational animosity directed at her. Mahoney responded to the filing of the complaint by increasing her mistreatment of plaintiff. HPS did not investigate the complaint and allowed Mahoney to replace plaintiff, thereby forcing plaintiff out of her position at Weaver.

On August 28, 1999, defendant Amato met briefly with plaintiff but quickly directed plaintiff elsewhere. On August 31, 1999, Amato permanently removed plaintiff from Weaver and offered her a position as vice president of a middle school, a position lower in both prestige and salary.

Under the circumstances, plaintiff was forced to take the inferior position.

Mahoney was removed from the position of principal at Weaver after plaintiff's transfer. The vice principal position at Weaver later became available, but plaintiff was not permitted to apply for the position. In April, 2000, defendants advertised an opening for executive vice principal of Hartford Public High School. Plaintiff applied for the position, having met the position requirements, but her application was denied as defendants did not notify the principal of Hartford High School of her application. The position was filled by a younger, less qualified applicant. Since May, 2000, other administrative positions have become available, and defendants have refused to provide her an opportunity to return to a high school.

Plaintiff filed a three count complaint alleging retaliation for filing a complaint in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1994 & Supp. IV 1998) ("ADEA") ("Count One"), violation of 42 U.S.C. § 1983 through deprivation of her rights to due process and equal protection("Count Two") and breach of contract ("Count Three").

## II. DISCUSSION

Defendants move to dismiss portions of the complaint arguing that the City of Hartford is not a proper party to this action, that defendant Amato may not be liable under the ADEA and that the breach of contract claim is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 1947, 29 U.S.C. § 185.

### A. Motion to Dismiss Standard

A motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d Cir.2001) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). A motion to dismiss must be decided on the facts as alleged in the complaint. *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 186 (2d Cir.2001). All allegations in the complaint are assumed to be true and are considered in the light most favorable to the non-movant. *Manning v. Utilities Mut. Ins. Co., Inc.*, 254 F.3d 387, 390 n. 1 (2d Cir. 2001).

### B. City of Hartford

■ Defendants argue that plaintiff fails to allege that the City of Hartford ("City") engaged in any unlawful activities and that the City of Hartford and HPS are separate and distinct entities. Plaintiff responds that the City is the Hartford School District, and that all employees of Hartford Public Schools are employees of the City.

Recent events foreclose the possibility that the City is a proper party to this action. On April 18, 1997, in response to systemic problems in the public school system, the State of Connecticut dissolved the Hartford Board of Education and transferred all authority to the State Board of Trustees. 1997 Conn. Special Act 4 §§ 1, 2 (enacted Apr. 18, 1997). As such, "[t]he State Board of Trustees ... [became] solely responsible for the management of the Hartford school district." *Id.* § 2. As a result the City effectively became a spectator in the administration of the school system. Although the Mayor of Hartford is included as a member of the Board of Trustees, he has no vote in proceedings, *id.* § 3, thus no control, Additionally, none of the remaining members of the Board of Trustees may be "a relative ... of any person employed by the Hartford School District or the city of Hartford." *Id.* The Act further requires assignment of all contracts and agreement made on behalf of

the Hartford Board of Education to the State Board of Trustees. *Id.* § 4. The Superintendent is elected by vote of the school board members pursuant to CONN. GEN. STAT. § 10–157(a), and thus, as a consequence of the Act, is elected by vote of the Board of Trustees. The only involvement the City thus has in the school system as a result of the Act is the fiduciary obligation of providing funding to the school system. *See* 1997 Conn. Special Act 4 §§ 4(d), 6(a).

As such, in the time period involved in the present complaint, the City has been stripped of any control over the administration of the school system and the State of Connecticut has taken over all aspects of its administration. Plaintiff therefore argues that the funding provided as ordered by the State subjects it to liability, or the fact that the school rests within its limits requires the same. The City has no indicia of control in the day-to-day affairs of HPS. The relevant dates in the complaint fall within the period in which the State assumed control, thus geography alone is offered as the basis for the complaint against the City. Absent any ability to influence events within the school system, either positively or negatively, the City cannot be held liable for the acts or omissions complained of by plaintiff. The City is dismissed as a party to the present action.

### C. Anthony Amato

■ Defendants argue that the ADEA does not provide for individual supervisor liability. Plaintiff apparently concedes the point as to defendant Amato. Such is not surprising given the holding in *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), declining to hold an employer's agent liable under Title VII, and the similar definition of "employer" as used in the ADEA. *Compare* 29 U.S.C. § 630(b) with 42 U.S.C. § 2000e(b). As statutory analyses under Title VII or the ADEA are generally interchangeable, *see EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279–80 (7th Cir.1995), *Tomka* is dispositive of the question of individual liability. Such is consistent with the views of other courts that have directly addressed the question of individual liability. *See Smith v. Lomax*, 45 F.3d 402, 403–04 n. 4 (11th Cir.1995); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir.1994); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587—88 (9th Cir.1993). Count One is dismissed as to defendant Amato.

### D. Breach of Contract

■ Defendants argue that the breach of contract claim must be dismissed as it requires interpretation of a collective bargaining agreement and as such, would be precluded by the LMRA. Plaintiff's allegations are, however, sufficiently ambiguous to preclude resolution of the issue.

■ Although plaintiff alleges that defendants breached an employment contract, plaintiff nowhere alludes to the source of the employment contract. Plaintiff alleges a violation of provisions in "her employment contract with HPS" and of "personnel policies." Although, as defendants contend, a collective bargaining agreement may well be the source of the contractual rights to which plaintiff refers, such is not apparent from the allegations. Plaintiff apparently agrees as much in arguing that "defendants' assertion that plaintiff does not have a contract other than the Union Contract . . . is misplaced." Although a complaint filed in federal court need only conform to a liberal notice pleading standard, *see Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), notice requires that plaintiff provide sufficient factual allegations from which defendants may discern

the nature of claim against them. Such is not possible with the present allegations. Counsel is well aware of the source of contractual obligations that provide a basis for the breach of contract claim and as such is obligated to identify the same. The motion to dismiss Count Three is therefore denied, however plaintiff will on or before April 11, 2003, file an amended complaint including sufficient factual allegations from which defendants may discern the source of the employment contract.

## III. CONCLUSION

Defendants' motion to dismiss (Doc. No. 11) is **granted in part**. The City of Hartford is dismissed as a party. Count One is dismissed as to defendant Amato. Plaintiff shall file an amended complaint addressing the issues raised above on or before April 11, 2003.

SO ORDERED.

## *RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION*

Plaintiff moves for reconsideration of the ruling dismissing the City of Hartford as a party. For the reasons set forth herein, reconsideration is granted and the prior ruling is adhered to.

Plaintiff argues that this Court misunderstood the import of her argument as to why the City of Hartford should be held liable for discriminatory conduct by supervisors of the Hartford Public Schools System ("HPS"). Plaintiff argues that "under the ADEA, an employer is, in fact, liable for any violation of the law by its management agent," and as such the City of Hartford is liable for the acts of supervisors within HPS. While plaintiff's argument is generally correct, the unique circumstances of HPS require a different conclusion.

▮ A municipality clearly may be held liable under the ADEA for the acts of supervisors in its employ, regardless of whether such supervisors are employed directly by the municipality or through a subordinate municipal agency. *See Quinones v. Evanston,* 58 F.3d 275, 277 (7th Cir.1995) ("[u]nder the ADEA ... a municipality is vicariously liable ... even if the supervisor acted in the teeth of the city's policy"). Contrary to plaintiff's interpretation, the ruling dismissing claims against the City in no way disregards the possibility of vicariously liability nor the definition of employer for purposes of the ADEA, but rather is premised on the unique circumstances of the City's involvement with HPS as a result of action by the State of Connecticut.

In *Sheff v. O'Neill,* 238 Conn. 1, 678 A.2d 1267 (1996), the Connecticut Supreme Court identified constitutional deficiencies inherent in HPS and invited legislative intervention to remedy state constitutional violations, *id.* at 45–46, 678 A.2d 1267. The legislature responded to *Sheff* by enacting 1997 Conn. Special Act 4 §§ 1, 2 (enacted Apr. 18, 1997). The Act removed the City of Hartford from any involvement in HPS except its responsibility for funding HPS.

There is no question that the period governed by the Act coincides with the allegations within plaintiff's complaint. As such, her case is not analogous to cases cited by plaintiff in which a municipality attempts to disavow its relationship to a supervisor by claiming the supervisor was employed by one of its municipal agencies, *see, e.g., Ritz v. Town of East Hartford,* 3:97CV01863 (GLG), 1998 WL 154541, at *4 (D.Conn. Mar. 18, 1998), but rather involves a municipality removed from the employment equation entirely by the State, which effectively substituted itself

for the municipality.[1] By virtue of the State assuming control of HPS, the City ceased to be an employer.

██ Plaintiff also argues that municipal liability is required by the legislative acts governing the Hartford school system. Special Act 97-4, section 4(d), provides that the "city of Hartford shall remain financially responsible for any liabilities or obligations, including contingent liabilities and obligations, incurred by the city council or the Hartford Board of Education prior to June 1, 1997." The Act was amended on Special Act 01-7, section 3(d), to provide "[t]he city of Hartford shall remain financially responsible for any liabilities or obligations, including contingent liabilities and obligations, incurred by . . . the State Board of Trustees for the Hartford Public Schools." Plaintiff argues that these Acts impose liability of the City for the conduct of the State Board of Trustees.

Although the argument is not without appeal, the express reference to financial responsibility vice legal responsibility requires as a matter of statutory interpretation that "liabilities and obligations" be interpreted in accordance with their financial rather than legal meaning. The relevant definition for liabilities is thus "pecuniary obligations . . . [or] debts," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1302 (1976), and for obligations is "formal and binding agreement[s] or acknowledgment[s] of a liability to pay a specified agreement or acknowledgment sum or do a specified thing," *id.* at 1556. Defined as such, the pass-through financial liability contemplated by the Act would require, as a prerequisite, a judgment against the State. Any legal action, consistent with the Act, must therefore proceed against the State, not the City.[2]

Plaintiff's motion for reconsideration (Doc. No. 22) is **granted** and the original ruling is adhered to.

SO ORDERED.

---

1. All cases cited to by plaintiff involve a master servant relationship governing cases, for example, where the municipality is the master and the agency claimed responsible for the conduct complained of is a servant of the municipality. Plaintiff cites to no case standing for the proposition that liability may be had against a municipality for the conduct of the State, as in the present case, which comes as no surprise as it would require that the municipality direct the State's action and stands in stark contrast to the history of events in Connecticut giving rise to the State's involvement in the school system.

2. If plaintiff filed the complaint against the State, any degree of success on the claimed violation of the ADEA, violation of 42 U.S.C. § 1983 and breach of contract would be precluded by action of sovereign immunity. As such, it would be a curious result indeed if the State intended the City of Hartford to be held liable for misconduct of officers appointed by it when the State could not itself be held liable.

Plaintiff alludes to a case before Judge Underhill in which he denied a motion to dismiss under similar circumstances but fails to provide any indication of the reasoning behind such decision. The only indication as to why the motion to dismiss was not granted is that a determination could not be made absent consideration of evidence of the employment relationship with the City. As the legal justification for so concluding is unclear absent any documentation of the decision, a bare reference to the decision will not preclude dismissal of claims against the City.