# Illinois Official Reports

## Appellate Court

---

**De Jesus v. Policemen's Annuity & Benefit Fund, 2019 IL App (1st) 190486**

---

| | |
|---|---|
| Appellate Court Caption | STEVE DE JESUS, SABRINA DUDLEY JOHNSON, and MARIA KOUZOUKAS, Individually and on Behalf of Other Similarly Situated Chicago Police Officers and Retirees, Plaintiffs-Appellants, v. THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>No. 1-19-0486 |
| Filed<br>Rehearing denied | November 14, 2019<br>December 11, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-CH-06195; the Hon. Raymond W. Mitchell, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Paul D. Geiger and Ronald C. Dahms, both of Northfield, for appellants.<br><br>Mary Patricia Burns, Vincent D. Pinelli, and Sarah A. Boeckman, of Burke Burns & Pinelli, Ltd., David Kugler, of David R. Kugler & Associates, and Justin Kugler, all of Chicago, for appellee. |

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Lampkin and Reyes concurred in the judgment and opinion.


**OPINION**


¶ 1    Plaintiffs Steve De Jesus, Sabrina Dudley Johnson, and Maria Kouzoukas brought a class action lawsuit against defendant Policemen's Annuity and Benefit Fund of the City of Chicago, alleging that they and other similarly situated Chicago police officers had been receiving reduced disability benefits because defendant failed to properly calculate their salaries—the metric that determined the amount of their disability benefits—by not including an additional form of compensation known as duty availability allowance. On defendant's motion, the circuit court dismissed plaintiffs' complaint, finding that they had failed to timely initiate administrative review of their allegedly miscalculated disability benefits pursuant to the procedures set forth in the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)).

¶ 2    On appeal, plaintiffs contend that, because their complaint's claims were based on defendant's systematic miscalculation of their disability benefits, they were not challenging administrative decisions and, thus, did not need to follow the procedures set forth in the Administrative Review Law. Because we agree with the circuit court that plaintiffs were required to follow the procedures set forth in the Administrative Review Law to review defendant's alleged miscalculation of their disability benefits, we affirm the dismissal of plaintiffs' complaint.


¶ 3                              I. BACKGROUND

¶ 4    In 1963, the Illinois Pension Code created the Policemen's Annuity and Benefit Fund of the City of Chicago to benefit Chicago police officers, their widows or widowers, and their children. 1963 Ill. Laws 213 (§ 5-101); see also 40 ILCS 5/5-101 (West 2018). The fund provides not only for retired police officers and their families, but also officers who become disabled. See 40 ILCS 5/5-101 *et seq.* (West 2018). For an officer who suffers a duty-related disability, he or she has the right to receive disability benefits "equal to 75% of his salary." *Id.* § 5-154(a). The fund also provides disability benefits for officers who suffer an occupational disease disability and ordinary disability, also based on a percentage of their salary. *Id.* §§ 5-154.1, 5-155.

¶ 5    For Chicago police officers, salary is defined as the "annual salary of a policeman appropriated for members of his rank or grade in the city's annual budget or appropriation bill." *Id.* § 5-114(d). However, since January 1, 1998, their salary must also include "any duty availability allowance received by the policeman." *Id.* § 5-114(f). The duty availability allowance is an additional form of remuneration to compensate officers for being available to perform their jobs. See *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL 114811, ¶ 17 (in the context of compensation for Chicago firefighters); *Collins v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 334 Ill. App. 3d 909, 914 (2002) (in the context of compensation for Chicago police officers). As the statutory language indicates, the officer must have actually received the duty availability allowance while an active duty officer. See *Hooker*, 2013 IL 114811, ¶ 23 (rejecting an argument under a similar

provision of the Pension Code related to Chicago firefighters that the firefighters' pension board was required to include a duty availability allowance in the calculation of widows' benefits, even if the decedents never actually received the allowance as active duty firefighters). The fund has a board responsible for administering the provisions of the Pension Code related to the fund. 40 ILCS 5/5-178 (West 2018). Under those provisions, the Administrative Review Law "shall apply to and govern all proceedings for the judicial review of final administrative decisions of the retirement board." *Id.* § 5-228(a).

¶ 6   Steve De Jesus is a disabled Chicago police officer and has received duty disability benefits continuously since September 1998. Sabrina Dudley Johnson is a disabled Chicago police officer and has received duty disability benefits continuously since October 1995. Maria Kouzoukas is a limited active duty Chicago police officer, who was previously disabled and received duty disability benefits between December 2005 and December 2014.

¶ 7   In May 2018, De Jesus, Johnson, and Kouzoukas, individually and on behalf of other similarly situated Chicago police officers, filed a three-count class action complaint against the Policemen's Annuity and Benefit Fund of the City of Chicago. Plaintiffs raised causes of action under the pension protection clause of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5), common law breach of contract, and the equal protection clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 2).[1] According to their complaint, several disabled Chicago police officers "recently" learned that their monthly disability benefits had been paid without the statutorily mandated duty availability allowance being included in the calculation of their salary, though some disabled officers had the allowance included. The complaint stated that, at present time, the duty availability allowance was a quarterly $900 payment ($3600 annually).

¶ 8   The complaint asserted that, in December 2017, defendant was asked to explain the inconsistency. Defendant's executive director responded the following month, stating the following:

> " 'The Fund's staff, in determining whether to include duty availability allowance in a particular officers['s] salary for purpose[s] of calculating his/her duty disability benefits, ascertains whether the officer actually *received* the duty availability allowance as part of his/her last payroll check from the Chicago Police Department. If [the officer] received it, the Fund includes it as part of the officer['s] salary; if [the officer] did not receive it, the Fund does not include it as part of the officer['s] salary.' " (Emphasis in original.)

The complaint stated that defendant later explained that

> "[T]he way it has been systemically calculating disability benefits, all disabled officers whose last day on the Chicago Police Department's (CPD) payroll was before the 15th day of a given month do/did *not* receive a monthly annuity that includes duty availability. Disabled officers whose last day on the Chicago Police Department

---

[1]We note, however, that defendant is not a proper party to be sued, as it is "merely an aggregation of assets." *Quinones v. City of Evanston*, 829 F. Supp. 237, 241 (N.D. Ill. 1993). To this point, no provision of the Pension Code permits defendant itself to be sued as an entity. See 40 ILCS 5/5-101 *et seq.* (West 2018). Rather, defendant's board was the proper party to be sued by plaintiffs. See *id.* §§ 5-178 to 5-195; see also *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶ 9 (where the Attorney General of Illinois named defendant's board as a defendant).

payroll was on or after the 15th day of a given month receive(d) a monthly annuity that includes/included duty availability pay in the calculation of salary." (Emphasis in original.)

Based on defendant's alleged failure to include the duty availability allowance in the salary computation for all disabled officers, the complaint claimed that defendant had been systematically miscalculating their monthly disability benefits. The complaint asserted that, in addition to plaintiffs, hundreds of other Chicago police officers had been affected by this systematic miscalculation. Plaintiffs sought various relief, including allowing the lawsuit to proceed as a class action, damages in the form of the unpaid disability benefits, and an injunction enjoining defendant from excluding the duty availability allowance in future benefit calculations.

¶ 9        In response to plaintiffs' complaint, defendant filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2018)). Initially, defendant noted that its board, not itself, was the proper party to be sued. Nevertheless, while tacitly acknowledging that plaintiffs had not been receiving the proper amount of disability benefits, defendant asserted that it calculated disability benefits based on salary information compiled and maintained by the City of Chicago (City). According to defendant, the City sent it "salary information that failed to include duty availability pay because of City management policies that require that CPD officers be in 'pay status' for at least 50% of the month in order to receive duty availability pay as part of their respective salaries."

¶ 10        Regardless, defendant argued that plaintiffs had ample notice and opportunity to contest the calculations of their respective disability benefit awards but failed to file their complaint within the applicable five-year statute of limitations period and failed to initiate administrative review within 35 days of the notice of their disability benefit awards. Defendant noted that each plaintiff had waited between 9 and 20 years from the date they were notified of their duty disability awards to file their complaint and supported this assertion by attaching to its motion to dismiss correspondences sent to each plaintiff concerning their awards.

¶ 11        In those correspondences, defendant's executive director informed them that they had been awarded a duty disability benefit of 75% of their monthly salary, provided their monthly salary at the time they filed for disability benefits, and listed their monthly benefit award based on those two figures. In each correspondence, defendant's executive director stated that if they had any questions about their award, they should contact defendant's office. Defendant's executive director sent this correspondence to Johnson on August 14, 1998, to De Jesus on February 19, 1999, and to Kouzoukas on October 16, 2009. Additionally, prior to each plaintiff having his or her disability hearing before defendant's board, they received a document detailing the calculation of his or her potential disability benefit award. Defendant also attached these records to its motion to dismiss.

¶ 12        In addition to defendant's first two arguments in favor of dismissal, it raised a third and contended that the affirmative defense of *laches* barred plaintiffs' lawsuit. In a fourth argument, defendant posited that plaintiffs' lawsuit should be dismissed because it had no authority to establish a police officer's salary, but rather calculated disability benefits based on the salary information provided from the City. Lastly, with respect to the class action component of plaintiffs' lawsuit, defendant argued that their request to proceed as a class action should be denied because the action was proper for administrative review and the Administrative Review Law precluded class actions.

¶ 13    Ultimately, the circuit court granted defendant's motion to dismiss, finding that, because plaintiffs did not timely initiate administrative review, their action was time-barred by the Administrative Review Law. As such, the court concluded it did not have jurisdiction to entertain plaintiffs' claims and accordingly dismissed their complaint with prejudice. Plaintiffs unsuccessfully moved the court to reconsider and timely appealed.

¶ 14                                    II. ANALYSIS

¶ 15    Plaintiffs contend that the circuit court erred in granting defendant's combined motion to dismiss. Under section 2-619.1 of the Code of Civil Procedure (*id.*), a defendant may bring a combined motion to dismiss, which allows the party to combine a section 2-615 motion to dismiss (*id.* § 2-615) with a section 2-619 motion to dismiss (*id.* § 2-619). *Schloss v. Jumper*, 2014 IL App (4th) 121086, ¶ 15. A motion to dismiss brought under section 2-615 challenges the legal sufficiency of the complaint by alleging defects apparent on its face. *In re Estate of Powell*, 2014 IL 115997, ¶ 12. A dismissal is proper under section 2-615 only when "it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *Id.* In contrast, a motion to dismiss brought under section 2-619 admits the legal sufficiency of the complaint but asserts that certain external defects or defenses defeat the claims therein. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. Such defects and defenses include where "the court does not have jurisdiction of the subject matter of the action, provided the defect cannot be removed by a transfer of the case to a court having jurisdiction" or where "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(1), (5) (West 2018). When analyzing a section 2-619 motion to dismiss, the court must determine whether the defendant's supporting documents establish a defect or defense that defeats the plaintiff's claims. *In re Marriage of Lewin*, 2018 IL App (3d) 170175, ¶ 12.

¶ 16    When reviewing either type of motion to dismiss, the circuit court is required to accept all well-pled facts in the complaint as true, as well as any reasonable inferences from those facts. *In re Estate of Powell*, 2014 IL 115997, ¶ 12; *Sandholm*, 2012 IL 111443, ¶ 55. As well, the pleadings must be viewed in the light most favorable to the nonmoving party. *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 23-24 (2004). We review both types of motions *de novo*. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29. Although we may affirm the circuit court's dismissal on any basis supported by the record (*Pranno Donkle v. Lind*, 2018 IL App (1st) 171915, ¶ 29), we begin with the circuit court's sole basis for dismissal in the instant case, which was plaintiffs' failure to timely initiate administrative review.

¶ 17    The Illinois Constitution allows review of administrative actions only "as provided by law." Ill. Const. 1970, art. VI, § 9. When our legislature expressly provides that administrative actions may be reviewed in accordance with the Administrative Review Law, it becomes "the sole method of reviewing an agency decision." *Burge*, 2014 IL 115635, ¶ 35. As such, when applicable, the Administrative Review Law eliminates all other statutory, equitable, and common law actions to review decisions of an administrative agency (*Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 333 (2009)), which a local pension board is considered. *Rutka v. Board of Trustees of the Cicero Police Pension Board*, 405 Ill. App. 3d 563, 566 (2010).

¶ 18    The Pension Code, as it relates to Chicago police officers, provides that the provisions of the Administrative Review Law apply and govern review of all "final administrative decisions" made by defendant's board. 40 ILCS 5/5-228(a) (West 2018). An administrative

decision is defined as "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101 (West 2018). But the term does not

> "include rules, regulations, standards, or statements of policy of general application issued by an administrative agency to implement, interpret, or make specific the legislation enforced or administered by it unless such a rule, regulation, standard or statement of policy is involved in a proceeding before the agency and its applicability or validity is in issue in such proceeding." *Id.*

¶ 19 Under the Administrative Review Law, every action to review a final administrative decision must be commenced by filing a complaint and issuing a summons within 35 days of the notice of that decision. *Id.* § 3-103. "An agency's decision is final and binding if the agency took definitive action on the pending matter and the applicant was informed of the action taken." *Ray v. Beussink & Hickam, P.C.*, 2018 IL App (5th) 170274, ¶ 22. Where an administrative agency provides fair and adequate notice to a party about a decision, the 35-day clock for administrative review commences, regardless if the notice informs the party about the time limitation to exercise his or her administrative review rights. *Grimm v. Calica*, 2017 IL 120105, ¶ 21. The failure to timely initiate administrative review when it is the sole method of review is jurisdictional and will bar the party from obtaining judicial review of an administrative decision. 735 ILCS 5/3-102 (West 2018); *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 350 (2006).

¶ 20 Plaintiffs acknowledge these bedrock principles of administrative review and concede they never initiated administrative review within 35 days of receiving notice of their disability benefit awards. However, they argue that, because defendant systematically miscalculated their disability benefits by failing to include the statutorily mandated duty disability allowances, their lawsuit challenges a rule, regulation, standard, or statement of policy of defendant, not administrative decisions. According to plaintiffs, because they are not challenging administrative decisions, the Administrative Review Law does not govern their claims and the 35-day clock to initiate administrative review is inapplicable. In making this argument, plaintiffs rely on *Board of Education of the City of Chicago v. Board of Trustees of the Public Schools Teachers' Pension & Retirement Fund of Chicago*, 395 Ill. App. 3d 735 (2009), *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2012 IL App (1st) 111625, and *City of Countryside v. City of Countryside Police Pension Board of Trustees*, 2018 IL App (1st) 171029.

¶ 21 In *Board of Education*, 395 Ill. App. 3d at 737, a board of education alleged that a pension board was using a method of calculating pension benefits that violated the Pension Code and resulted in overgenerous benefits. An association representing the pensioners whose benefits could be diminished by an unfavorable result in the litigation intervened and argued that the board of education was barred from seeking relief because it had failed to timely initiate administrative review of the administrative decisions that awarded the pension benefits. *Id.* The appellate court concluded that, because the board of education raised an allegation that there had been a systematic miscalculation of pension benefits, its challenge was not to an administrative decision as "[a] systemic miscalculation falls outside the definition of an 'administrative decision'" because it "is not a 'decision, order or determination of any

administrative agency rendered in a particular case,' but a 'rule[ ], regulation[ ], standard[ ], or statement[ ] of policy.' " *Id.* at 744 (quoting 735 ILCS 5/3-101 (West 2006)).

¶ 22    In reaching this conclusion, the appellate court went to great lengths to limit its application. *Id.* at 742. Most notably, the appellate court observed that, in other appellate decisions, "challenges to errors in calculating pensions were decisions subject to the requirements of the Administrative Review Law," but those decisions "involved disputes between a pension board and a pensioner." *Id.* In distinguishing those decisions from its case, the court noted that its dispute involved a board of education, which "was not a party to any of the underlying proceedings" and which would "not have an interest in and standing to seek the review of each individual case that comes before the pension board." (Internal quotation marks omitted.) *Id.* at 742-43. The appellate court also suggested that, when an individualized miscalculation is at issue, "a third party must seek review of the calculation decision within the 35-day period permitted in the Administrative Review Law." *Id.* at 744.

¶ 23    Similarly, in *City of Countryside*, 2018 IL App (1st) 171029, ¶¶ 1, 77, a decision that relied heavily on *Board of Education*, the dispute involved a city—a nonparty to the original administrative decisions—challenging a pension board's calculation of retired police officers' pension benefits. And because of this fact, the city was not required to timely initiate administrative review. *Id.* ¶ 79. Furthermore, just like in *Board of Education*, the appellate court remarked that the jurisdictional time limit of the Administrative Review Law was inapplicable because the dispute at issue was not "between a pensioner—someone who has applied to the pension board for specific relief—and the [pension] [b]oard itself." *Id.* ¶ 76.

¶ 24    In *Hooker*, 2012 IL App (1st) 111625, ¶¶ 3, 4, 7-8, two widows of Chicago firefighters brought a lawsuit that contained a count they desired to bring as a class action. In that count, they sought a declaratory judgment that a pension board had failed to include duty availability pay in the calculation of their widows' benefits based on an amendment to the Pension Code's provisions related to Chicago firefighters. *Id.* ¶¶ 6-8. The pension board had refused to include the duty availability pay in the calculation of their widows' benefits based on its reading of the Pension Code, specifically because their late husbands never actually received the duty availability pay when they were active duty firefighters. *Id.* ¶ 10. The circuit court denied the plaintiffs' motion for class certification and granted the pension board's motion for summary judgment, finding the amendment to the Pension Code did not require the pension board to include duty availability pay in the calculation of the widows' benefits. *Id.*

¶ 25    On appeal, after reviewing the amendment to the Pension Code, the appellate court first determined that the duty availability pay had to be included in the calculation of the widows' benefits and the pension board incorrectly failed to do so. *Id.* ¶ 21. On the issue of the plaintiffs' motion for class certification, the pension board argued that the circuit court could not have granted class certification because the Administrative Review Law did not permit class actions. *Id.* ¶ 23. In rejecting this argument, the appellate court adopted the reasoning of *Board of Education* that claims alleging systematic miscalculations do not constitute challenges to administrative decisions, but rather challenged rules, regulations, standards, or statements of policy. *Id.* ¶ 24. To this end, the appellate court found that, because the pension board had broadly refused to include the duty availability pay in the calculation of the widows' benefits, it had systematically miscalculated the amount owed to the putative class members. *Id.* ¶ 25. Therefore, the Administrative Review Law did not require the dismissal of the plaintiffs' motion for class certification. *Id.* We briefly note that the Illinois Supreme Court

ultimately reversed the appellate court on the class certification issue, but because it found that the widows' benefits should not have included the duty availability pay; thus, the plaintiffs had failed to state a cause of action. *Hooker*, 2013 IL 114811, ¶ 24.

¶ 26      What can be gleaned from *City of Countryside*, *Hooker*, and *Board of Education* is that, when pension or disability benefits are at issue, a party may challenge a pension board's action without timely initiating administrative review under two limited circumstances. The first circumstance is when the party challenging the miscalculations was not a party to the underlying administrative action, *i.e.*, a city and not a pensioner, and the challenge is to a systematic miscalculation, not merely an individual miscalculation. See *City of Countryside*, 2018 IL App (1st) 171029, ¶¶ 76-79; *Board of Education*, 395 Ill. App. 3d at 742-44. In fact, our supreme court has noted this principle under the context that "[p]reventing significant violations of the Pension Code and ensuring the fiscal integrity of the [pension] [f]und are important goals." *Burge*, 2014 IL 115635, ¶ 38 (noting that "certain challenges to actions taken by a retirement board have been authorized both within the context of administrative review and without," including as the "appellate court has recognized that, in certain circumstances, a governmental entity which was not a party before a pension board proceeding may contest a retirement board's administrative decision when it would result in the diminution of a pension fund").

¶ 27      Still, plaintiffs argue that *City of Countryside* and *Board of Education* stand for the proposition that systematic miscalculations are not litigated via the Administrative Review Law. However, that argument reads the two decisions far too broadly, especially in light of the appellate court in *Board of Education* expressly limiting the applicability of systematic miscalculation claims to litigation where the dispute involves a nonparty to the underlying administrative proceedings who would "not have an interest in and standing to seek the review of each individual case that comes before the pension board." *Board of Education*, 395 Ill. App. 3d at 742-43. The second limited circumstance is where the party challenging the systematic miscalculations can point to a specific rule, regulation, standard, or statement of policy from the pension board itself. This was the case in *Hooker*, where the pension board broadly refused to include duty availability pay in the calculation of widows' benefits based on its interpretation of an amendment to the Pension Code. *Hooker*, 2012 IL App (1st) 111625, ¶¶ 10, 17, 25.

¶ 28      In the present case, the dispute between plaintiffs and defendant are factually unlike the disputes at issue in *City of Countryside*, *Hooker*, and *Board of Education*. In contrast to *City of Countryside* and *Board of Education*, the present case *is* a dispute between pensioners and a pension board, where the pensioners clearly had interest in and standing to seek the review of their individual disability award before the pension board. And in contrast to *Hooker*, it is clear from plaintiffs' complaint (and corroborated by assertions in defendant's motion to dismiss) that defendant did not have a specific rule, regulation, standard, or policy of excluding duty availability allowances from the calculation of disability benefit awards. Rather, what is shown through plaintiffs' complaint is that defendant relied on salary information from the City, in particular when the officer was removed from the City payroll and, as a result, the final paychecks of officers. And based on the salary information from the City, defendant calculated the disability benefit awards that resulted in some disabled officers receiving benefits that included the duty availability allowance and some not receiving it. Although plaintiffs posit that perhaps the City accounted for the duty availability allowance on a monthly basis and this

accounting practice may have caused the monthly paycheck discrepancy at issue in this appeal, that does not change the fact that defendant was calculating an officer's salary using the salary information provided by the City. Thus, it cannot be said that defendant itself had a specific rule, regulation, standard, or statement of policy to exclude the duty availability allowance as part of the disability benefit awards.

¶ 29     Although plaintiffs have filed a complaint under the theory of a systematic miscalculation by defendant, given that they are not a nonparty government entity and defendant had no specific rule, regulation, standard, or statement of policy to exclude the duty availability allowance as part of the disability benefit awards, plaintiffs may not escape the procedures set forth by the Administrative Review Law. And as long as the decisions of defendant's board were final and plaintiffs received fair and adequate notice of the decisions, plaintiffs' claims are time-barred.

¶ 30     Here, each plaintiff received a letter from defendant's executive director, informing the plaintiffs that they were granted a duty disability award of 75% of their salary. Those letters further provided plaintiffs their specific salary at the time they filed for disability benefits and the resulting monthly disability benefit they were awarded. These determinations clearly affected plaintiffs' legal rights with respect to their benefit awards and terminated the proceedings before defendant's board. See *Sharp v. Board of Trustees of the State Employees' Retirement System*, 2014 IL App (4th) 130125, ¶ 17 (finding that a pension board's approval of a monthly benefit "was a final administrative decision"). Based on this information, plaintiffs could have consulted their own salary records and determined whether the listed salary provided in the letter included the duty availability allowance or was simply mirroring their ordinary base pay.

¶ 31     For example, in Kouzoukas's letter, defendant's executive director informed her that she was awarded a 75% duty disability award based on her monthly salary at the time she filed for disability benefits of $5388.50. The letter further provided that, based on these two figures, her monthly disability award would be $4041.38. Kouzoukas could have consulted her own paycheck information and corroborated if $5388.50 was her salary at the time she filed for disability benefits and, based on this, determined if the duty availability allowance was included in her monthly disability award. De Jesus and Johnson's letters from defendant's executive director provided the same figures and opportunity for such verification. As such, the letters from defendant's executive director to plaintiffs fairly and adequately informed them of their benefit awards. See *Grimm*, 2017 IL 120105, ¶ 21. Because "disputes between a pension board and a pensioner" are subject to the requirements of the Administrative Review Law (*Board of Education*, 395 Ill. App. 3d at 742), the 35-day clock to dispute the calculation of their benefit awards began when they received the letter. 735 ILCS 5/3-103 (West 2018). As plaintiffs did not initiate administrative review within 35 days of receiving notice of their benefit awards, the circuit court correctly found it was without jurisdiction to entertain the claims in their complaint and correctly granted defendant's motion to dismiss. See *Rodriguez*, 218 Ill. 2d at 350.

¶ 32                             III. CONCLUSION

¶ 33     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 34     Affirmed.