2024 IL App (1st) 221870-U

No. 1-22-1870

Order filed March 19, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PAUL M. STANCZYK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CH 5583 |
| | ) | |
| THE RETIREMENT BOARD OF THE POLICEMEN'S | ) | |
| ANNUITY AND BENEFIT FUND OF THE CITY OF | ) | |
| CHICAGO, | ) | Honorable |
| | ) | David B. Atkins, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse the circuit court's order reversing the administrative agency's determination that plaintiff police officer was ineligible for disability benefits, where the record supports the agency's finding that plaintiff was not disabled as a result of a motor vehicle accident while on duty.

¶ 2    Defendant, the Retirement Board of the Policemen's Annuity and Benefit Fund of the City

of Chicago (Board), appeals the circuit court's order reversing the Board's determination that

plaintiff Paul M. Stanczyk was ineligible for disability benefits. On appeal, the Board asserts that the circuit court erred in reversing the Board's finding that plaintiff was ineligible for disability benefits because he was not disabled as a result of an act of duty, any mental health disabilities preceded his employment, and plaintiff's testimony lacked credibility. We reverse the circuit court's order and affirm the Board's order finding plaintiff ineligible for disability benefits.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Summary of the Case

¶ 5    Plaintiff was appointed a police officer with the Chicago Police Department (CPD) on April 28, 2014. Prior to appointment, plaintiff completed an "appraisal of health history" form for the CPD, indicating no prior history of concussions, head injuries, nervousness, or excessive worry, but indicating he experienced "occasional headaches." He checked the "seldom" box to indicate past use of alcohol and the "none" box as his current use. Plaintiff certified that there were no "willful misrepresentations, omissions, or falsifications" on the form.

¶ 6    On June 23, 2017, plaintiff was on duty as a passenger in a Chicago police vehicle which was involved in a motor vehicle accident while in pursuit of another vehicle. The Board acknowledges that plaintiff sustained a concussion and injuries to his lower back, neck, left shoulder, and left upper extremity as a result of the accident. Effective April 30, 2020, plaintiff had exhausted all available medical leave.

¶ 7    On June 8, 2020, plaintiff filed with the Board an application for disability benefits. He attached an affidavit averring that, as a result of the June 23, 2017, motor vehicle accident, he suffered a concussion and injuries to his lower back, neck, left shoulder, and left upper extremity. He underwent a right C6-C7 posterior foraminotomy procedure, received "several" steroid

injections, and has been diagnosed with "post-concussive syndrome and post-concussion vision syndrome." Plaintiff averred that, due to his injuries, he was currently under a medical doctor's care and unable to perform the essential duties of a Chicago police officer.

¶ 8    On August 26, 2021, the Board conducted a hearing on plaintiff's disability application and subsequently found plaintiff ineligible for duty or ordinary disability benefits.

¶ 9                              B. Plaintiff's Medical Records

¶ 10    The record contains numerous reports of medical examinations performed for diagnosis and treatment purposes after the June 23, 2017, motor vehicle accident, and later examinations for purposes of evaluating plaintiff's disability claim after he filed his application for disability benefits. The reports were admitted into the administrative record at the hearing without objection. We summarize the examinations relevant to our analysis on appeal.

¶ 11                              1. *Post-Accident Medical Examinations*

¶ 12    On July 18, 2017, plaintiff received a CT scan of his "head/brain," which found "[n]ormal CT of the brain, no acute abnormality" or signs of fractured bones. On July 31, 2017, an MRI of plaintiff's brain appeared "normal***" with "no detectable intracranial injury."

¶ 13    On August 17, 2017, psychologist Elizabeth M. Pieroth diagnosed plaintiff as having sustained a concussion. During the examination, plaintiff disclosed he "has been treated for anxiety since childhood." He stated that he used alcohol socially and did not use "[i]llicits." He also disclosed sustaining five prior concussions from grade school into his late 20s. During one incident, when plaintiff was about 19 or 20 years old, he was "skitching" on the back of a vehicle driving 55 miles per hour, fell off, and could not recall the three days following the injury. During another incident in plaintiff's mid-20s, he fell off a 15-foot cliff and hit his head. The most recent

of the five incidents occurred when plaintiff was in his late-20s. It involved a vehicular accident that left plaintiff's left side paralyzed for about five hours.

¶ 14    On July 5, 2018, plaintiff consulted with neurologist Kenneth Moore, M.D., for "persistent symptoms following a concussion" on June 23, 2017. Dr. Moore noted plaintiff did not suffer direct head trauma, exhibited no evidence of vestibular dysfunction, and "certainly" did not have trauma-specific vestibular disorder. He found no evidence of "serious psychopathology, cognitive impairment, or deception." Dr. Moore believed the "correct diagnosis" was persistent postural perceptual dizziness (PPPD) perpetuated by anxiety, and not a vestibular or central nervous system injury. He could not exclude motivational factors, but did not believe compensation and disability issues were "major issues."

¶ 15    An MRI of plaintiff's cervical spine, conducted on June 18, 2018, found spinal discs C5-6 exhibited a "disc bulge" and "mild disc narrowing," and "mild to moderate narrowing at C6-7." On August 28, 2018, a neurosurgeon performed a right C6-C7 posterior foraminotomy procedure on plaintiff to treat a pinched nerve caused by herniated cervical disks. The neurosurgeon released plaintiff to return to work in a limited capacity on October 20, 2018. On November 29, 2018, the neurosurgeon found plaintiff had no significant arm pain and no neck pain but a "slight decreased range" of neck motion. Plaintiff was released to work on January 16, 2019, "with no restrictions" and could perform "regular work duties."

¶ 16    On December 6, 2018, a vision evaluation concluded that plaintiff exhibited "[n]o visual based limitation to performance or work setting." Plaintiff reported "no double vision," his vision was clear, and he only experienced dizziness once a week for a few seconds.

¶ 17    On March 3, 2020, Dr. Candace Asiedu performed a physical examination of plaintiff and found he may work full duty.

¶ 18                              2. *Substance Abuse Treatment*

¶ 19    On November 1, 2018, plaintiff was admitted to Rosecrance for a 30-day residential substance abuse treatment program. On December 3, 2018, plaintiff entered into Rosecrance's four-to-six-week intensive outpatient level of care program. On February 15, 2019, plaintiff was admitted to a recovery center in Florida, under "medical and psychological care," and agreed to a minimum of 30 days in treatment with a tentative discharge date of April 1, 2019.

¶ 20    On February 4, 2020, psychologist Dr. Robin Kroll diagnosed plaintiff with alcohol and substance abuse, as well as posttraumatic stress disorder (PTSD) "both childhood trauma and job related." Dr. Kroll noted that plaintiff was an "[a]lcoholic since the age 11" and had an alcoholic father, whom plaintiff saw "beat up" his mother.

¶ 21    On February 13, 2020, psychiatrist Alan R. Hirsch, M.D., noted plaintiff had a past psychological history of "addiction, depression, anxiety, ADHD, OCD, PTSD, cognitive multi-processing disorder, restless leg syndrome, [and] dependency to stimulants (cocaine)." Dr. Hirsch also noted plaintiff abused cocaine for 18 years.

¶ 22                              3. *Board's Fitness for Duty Evaluation*

¶ 23    On April 1, 2020, prior to plaintiff filing his application for disability benefits, CPD psychologist Jenny Wamstat, Psy.D., conducted a mandated fitness for duty examination of plaintiff to determine plaintiff's psychological fitness for duty. Plaintiff relayed that he believed the reason for the examination was because he had been diagnosed with a " 'substance abuse

disorder' " and recently completed an inpatient rehabilitation program. Dr. Wamstat concluded plaintiff was unfit for duty.

¶ 24    In conducting her examination, she interviewed plaintiff, and then spoke with his psychiatrist, Dr. Hirsch, during which she noted several discrepancies, and so she contacted plaintiff again. Plaintiff reported that after the motor vehicle accident, he began having substance abuse problems and "mainly" abused alcohol and painkillers. Plaintiff "insisted" to Dr. Wamstat that he did not enter into any type of treatment center for substance abuse in December 2019, and asserted he did not enter an inpatient program until January 21, 2020. Plaintiff stated he relapsed on leftover prescribed painkillers, apologized for omitting that information from the evaluation, and could not explain the omission. When directly asked if he had ever abused any illicit substances, plaintiff responded that "he never had."

¶ 25    When Dr. Wamstat told plaintiff that Dr. Hirsch had reported a " 'long history of dependence on cocaine,' " plaintiff "sighed deeply, paused before answering, and then said, 'they are supposed to be keeping that under wraps, the classification was supposed to be substance abuse disorder.' " When asked why the information would need to be omitted, plaintiff said " 'because police officers with a history of cocaine abuse does not look good.' " Plaintiff denied Dr. Hirsch's reference that plaintiff was dependent on cocaine for 18 years. Plaintiff stated he began using cocaine in 2017 and last used it in February 2020. Plaintiff explained that Dr. Hirsch possibly "rel[ied] on information from [his] intake, when they asked all kinds of questions, like how long ago did you first use a substance."

¶ 26    Dr. Wamstat found plaintiff unfit for duty at that time. She stated the evidence indicated "a long history of psychiatric symptoms," "numerous years of cocaine abuse," a "lack of insight

into his mental health problems," and concerns with emotional regulation. She also noted plaintiff omitted critical information, which raised concerns about his integrity. Dr. Wamstat diagnosed plaintiff with severe stimulant use disorder, adjustment disorder with mixed anxiety and depressed mood, PTSD, and general anxiety disorder.

¶ 27                                    4. *Board's Independent Medical Examinations*

¶ 28    On September 10, 2020, after plaintiff filed his application for disability benefits, psychiatrist Gaurava Agarwal, M.D., evaluated plaintiff. He diagnosed plaintiff with "[s]timulant use disorder: cocaine, severe, in early remission," "[o]piate use disorder, severe, in early remission," and "r/o alcohol use disorder." Based on current testing, he opined that plaintiff was "unable to work in any capacity due to the severity of his substance use disorder." Dr. Agarwal noted that plaintiff's "self-report is inconsistent with the medical records regarding the duration and course of his substance use disorder." He opined that plaintiff "more than likely suffered from substance use disorder prior to becoming a police officer." Plaintiff's disorder was "quite severe and relapsing." Due to plaintiff's "repeated relapses ***, short duration of sobriety maintenance after treatments, continued demonstrated inconsistencies and omissions, lack of insight, and impaired judgment," Dr. Agarwal believed it "unlikely *** in the foreseeable future" that plaintiff could "perform the essential duties of a police officer which require a high standard of integrity."

¶ 29    On March 30, 2021, Lenny Cohen, M.D., examined plaintiff and assessed him to have a mild traumatic brain injury (mTBI) with "persistent diplopia, dizziness, tinnitus." Dr. Cohen concluded the "[c]ombination of [plaintiff's] symptoms currently makes him unfit for the duty as a police officer" both at "limited" and "full" duty. He further reported that "[a]s no data was provided about any clinical pathology prior to [the motor vehicle accident], it is safe to assume

that his current presentation is related to his accident." After additional notes were provided regarding plaintiff's psychological evaluation, Dr. Cohen later clarified, "Based on his current neuro-cognitive deficits as well as a time-line for symptoms development, I do not think that his history of questionable depression in the past has any contribution to his current presentation." Dr. Cohen believed "one should understand that most of [plaintiff's] current *** psychological manifestations are related to his mTBI."

¶ 30    On July 23, 2021, plaintiff received an ocular evaluation, which showed "no signs of pupil or ocular movement abnormalities which would be concerning for head trauma sequelae" and "no visual field deficits." There were "no objective ocular findings which would be consistent with concussion" and, "[f]rom a strictly ocular perspective, [plaintiff] has no objective findings which would qualify him for disability."

¶ 31                    *5. Shirley Ryan Ability Lab Additional Examination*

¶ 32    On January 13, 2021, licensed clinical psychologist Linda Rice, Ph.D. conducted a neuropsychological evaluation of plaintiff. No cognitive difficulties were presented on screening. From a neuropsychological assessment, the only cognitive difficulty present "was on a test of verbal memory that required an active learning approach for effective memory." The evaluation report noted that "[c]ognitive rehabilitation is unlikely to be helpful and might inappropriately reinforce the belief he has cognitive impairment."

¶ 33                    C. Hearing before the Board and Board Findings

¶ 34    Plaintiff testified that he successfully passed all drug screenings conducted during the preemployment and training stages to becoming a police officer, and during the six years he was a police officer prior to the June 2017 motor vehicle accident. He denied having had any injuries,

"pain in [his] body," "any type of ailments," or "substance abuse disorder that prevented [him] from working" prior to the accident.

¶ 35    After temporarily being off work following the motor vehicle accident, plaintiff returned to work for "a couple to several" months until he underwent cervical surgery. Plaintiff confirmed that he was prescribed narcotics in June of 2017 after the accident. Plaintiff denied that he had healed following his surgery, as "it's *** an ongoing situation" and "symptoms or side effects have reoccurred." He had "excruciating pain" and desensitization in [his] thumb, index and middle fingers." He also "lost strength in [his] right triceps again" and a recent MRI showed there was narrowing in his spinal canal. Plaintiff confirmed he could possibly undergo another surgery.

¶ 36    Plaintiff testified that a doctor diagnosed him with "convergent insufficiency, postconcussional syndrome and visual disturbance." Another doctor told him he had "reductions in balance and mild positional nystagmus in both eyes," which came from his concussion and would likely "be with [him] *** permanently." He incurred a traumatic brain injury and had been diagnosed by two doctors with PPPD. Dr. Cohen told him that, due to the accident, plaintiff was "definitely partially handicapped," had concussion "side effects," and would "live with these symptoms permanently."

¶ 37    Plaintiff further stated that, at the time of the hearing, he was attending the Shirley Ryan Ability Lab (Shirley Ryan), where he was diagnosed with "cognitive and multiprocessing disorder" and told he had a "chronic concussion." He explained that his "eyes and *** ears don't communicate with [his] brain the way they used to, so [he] suffered[ed] from double vision, blurry vision, [and] auditory confusion." He denied these symptoms occurred prior to the accident. He also confirmed that Shirley Ryan rated him as "moderately handicapped" due to his dizziness.

¶ 38    In reference to the "appraisal of health history" form that plaintiff completed prior to becoming an officer, he believed his answers on the form were true and correct. Plaintiff confirmed he accurately conveyed that he "[s]eldom[ly]" used alcohol in the past and that he never had any illness or injury other than those noted in the form. Plaintiff told Dr. Wamstat it was "not a true statement" that he was dependent on cocaine for 18 years. He could not recall telling Dr. Hirsch that he had anxiety starting at age 6, and denied being diagnosed with anxiety at age 6.

¶ 39    Plaintiff denied reporting that he had received concussions prior to becoming a police officer, explaining he was asked if he had received any head injuries in the past and "came up with these five incidents." Plaintiff confirmed that one head injury resulted in a settlement, in which he received compensation for "[h]ead trauma, I don't recall," and then stated the compensation was "for just pain and suffering." Plaintiff denied telling Dr. Wamstat that he had never abused substances but did disclose his substance abuse disorder. Plaintiff further denied telling Dr. Wamstat that the symptoms from his "traumatic brain injury" had "dissipated." He did not recall Dr. Agarwal diagnosing him with using opioids, and denied telling Dr. Agarwal that he was an alcoholic since age 11. Rather, he told Dr. Agarwal he had his "first sip of alcohol at eleven."

¶ 40    On redirect examination, plaintiff testified that he was told he developed a substance abuse disorder using the "Norco" prescribed to him after the accident. When he could not refill his prescription, he used cocaine for his arm pain.

¶ 41    On September 30, 2021, the Board issued a decision denying plaintiff's application for duty and ordinary disability benefits. The Board's final conclusions of fact included that plaintiff's testimony "was not credible," he was "not physically disabled," and if he was disabled, "that disability results from his long-standing substance abuse problems which [he] had prior to the time

he entered police service." The Board explained that it placed "no weight" on plaintiff's testimony, as plaintiff "systematically engaged in a pattern of misrepresentation and obfuscation of the facts in order to obtain disability benefits." The Board noted that, although plaintiff denied claiming a psychiatric or psychological disability, the "only credible evidence" demonstrated that his only disability is his substance abuse disorder or "possibly" his anxiety disorder. The Board found plaintiff could not receive benefits for his substance abuse disorder, anxiety disorder, and history of head injuries, as they were "all present well before his appointment to CPD."

¶ 42                    D. Plaintiff's Petition for Administrative Review

¶ 43    On November 3, 2021, plaintiff filed with the circuit court a petition for administrative review, alleging the Board's decision was clearly erroneous and against the manifest weight of the evidence. In plaintiff's memorandum supporting his petition, he argued that the Board erred in finding he was not disabled, disputed he had a mental or physical defect prior to employment with CPD, and contended the Board's finding that his testimony lacked credibility was against the manifest weight of the evidence.

¶ 44    On November 16, 2022, after further briefing on the petition, the circuit court granted plaintiff's petition for administrative review, reversed the denial of plaintiff's ordinary and duty disability benefits, and remanded to the Board to determine the percentage rate of plaintiff's salary to be awarded, at either 50% or 75%. The Board filed a timely notice of appeal.

¶ 45                             II. ANALYSIS

¶ 46    On appeal, the Board argues that the circuit court erred in reversing its order, as the record supported the Board's factual findings that plaintiff was not physically disabled, his mental health disability preceded his employment, and plaintiff's testimony lacked credibility.

¶ 47   In 1963, the Illinois Pension Code (Code), under Article 5, created the Policemen's Annuity and Benefit Fund of the City of Chicago (40 ILCS 5/5-101 *et seq.* (West 2020)) to benefit retired and disabled Chicago police officers, their widows or widowers, and their children. *De Jesus v . Policemen's Annuity & Benefit Fund of City of Chicago*, 2019 IL App (1st) 190486, ¶ 4. The Code authorizes the Board to approve payment of any benefit granted from the Fund pursuant to Article 5 of the Code. 40 ILCS 5/5-189 (West 2020). The provisions of the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2020)) govern judicial review of the Board's final administrative decisions. 40 ILCS 5/5-228 (West 2020).

¶ 48   Here, plaintiff filed an application for duty disability benefits, as defined under section 5-154 of the Code (40 ILCS 5/5-154 (West 2020)), or, in the alternative, ordinary disability benefits, as defined under section 5-155 of the Code (40 ILCS 5/5-155 (West 2020)). "[A] plaintiff in an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden." *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 505 (2007); *Peacock v. Board of Trustees of Police Pension Fund*, 395 Ill. App. 3d 644, 652 (2009) (claimant bears the burden of proving entitlement to disability benefits).

¶ 49   Section 5-154(a) of the Code provides that an active police officer who becomes disabled as the result of injury incurred in the performance of an act of duty has a right to receive duty disability benefits, equal to 75% of the officer's salary, during any period of such disability for which he does not have a right to receive salary. 40 ILCS 5/5-154(a) (West 2020). Section 5-155(a) of the Code provides that a police officer less than age 63 who becomes disabled "as the result of any cause other than injury incurred in the performance of an act of duty, shall receive ordinary disability benefit," in the amount 50% of the officer's salary, during a period or periods of

disability exceeding 30 days, for which the officer does not have a right to receive any part of his salary. 40 ILCS 5/5-155(a) (West 2020).

¶ 50    An officer found to be disabled may be awarded a duty disability benefit "if the disability resulted from either an injury incurred in the performance of an act of duty" or a "mental disorder that existed at the time the injury was sustained." *Kelly v. Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago*, 2022 IL App (1st) 210483, ¶ 44. Otherwise, the disabled officer may receive ordinary disability benefits. *Id.* Under section 5-157(e) of the Code, however, disability benefits "shall not be paid for any disability based upon or caused by any mental or physical defect which the policeman had at the time he entered the police service." 40 ILCS 5/5-157(e) (West 2020).

¶ 51    In the context of claims for disability benefits, the Code defines "disability" as "[a] condition of physical or mental incapacity to perform any assigned duty or duties in the police service." 40 ILCS 5/5-115 (West 2020). To be eligible for duty disability benefits based on a psychological disability, that disability " 'must result from a special risk, not ordinarily assumed by a citizen in the ordinary walks of life.' " *Kelly*, 2022 IL App (1st) 210483, ¶ 45 (quoting *Robbins v. Board of Trustees of Carbondale Police Pension Fund of City of Carbondale*, 177 Ill. 2d 533, 542 (1997)). The applicant for duty disability benefits bears the burden of establishing both that the applicant is disabled and that the disability resulted from an injury incurred in the performance of an act of duty. *Terrano v. Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago*, 315 Ill. App. 3d 270, 274 (2000). When determining whether an applicant's disability was the result of the performance of duties as a police officer, it is the Board's

function to resolve the conflict in medical evidence. *Swanson v. Board of Trustees of Flossmoor Police Pension Fund*, 2014 IL App (1st) 130561, ¶ 31.

¶ 52    On appeal from a decision of the circuit court on a petition for administrative review, we review the decision of the Board, not that of the circuit court. *Abbate v. Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago*, 2022 IL App (1st) 201228, ¶ 32. Our standard of review depends upon the nature of the question we are addressing, as we review questions of law under the *de novo* standard and questions of fact under the manifest weight standard. *Siwinski v. Retirement Board of Firemen's Annuity & Benefit Fund of City of Chicago*, 2019 IL App (1st) 180388, ¶ 25. "When the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, a mixed question of law and fact exists and the standard of review is whether the Board's determination is clearly erroneous." (Internal quotation marks omitted.) *Id.*

¶ 53    Here, plaintiff essentially raises questions of fact, as he disputes the factual findings of the Board, *i.e.*, that he did not have a physical injury that rendered him unable to perform his duties and that his symptoms were the result of mental disorders incurred prior to appointment as an officer. See *Id.* ¶ 26. An agency's factual finding is against the manifest weight of the evidence "if the opposite conclusion is clearly evident or if the finding is unreasonable, arbitrary, and not based on any evidence." *Id.* ¶ 27.

¶ 54    Stated differently, "if there is evidence of record that supports the agency's determination, it must be affirmed." *Goodman v. Morton Grove Police Pension Board*, 2012 IL App (1st) 111480, ¶ 25. We may not consider new or additional evidence beyond what was originally presented to the Board, and the "findings and conclusions of the administrative agency on

questions of fact shall be held to be *prima facie* true and correct." 735 ILCS 5/3-110 (West 2020). In reviewing an administrative agency's question of fact, we will not reweigh the evidence or substitute our judgment for that of the administrative agency. See *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998).

¶ 55    We find substantial evidence in the record supports the Board's finding that plaintiff was not disabled as a result of the motor vehicle accident. Soon after the accident, plaintiff's MRI and CT scans showed no abnormalities. No direct head trauma, vestibular, or central nervous system injuries have been found. A neuropsychological assessment found that the only cognitive difficulty present "was on a test of verbal memory that required an active learning approach for effective memory." Despite plaintiff's claims of continuing vision issues and tinnitus of the ears, his eyes and ears examinations also consistently showed no irregularities. His most recent eye examination, conducted just before the hearing on his application for benefits, found no vision-related disabilities. Although plaintiff underwent spinal surgery for a herniated disc following the accident, the surgeon who performed the procedure eventually released him for return to work without restrictions effective January 2019, prior to plaintiff filing his application for disability benefits in June 2020. In fact, following medical examinations, multiple doctors released plaintiff to return to work without limitations.

¶ 56    Of the numerous examinations of plaintiff, only Dr. Cohen concluded that plaintiff sustained injuries as a result of the accident (specifically, psychological issues and a brain injury leading to dizziness and tinnitus) that continued to be symptomatic leading to then-current neuro-cognitive deficits and were not attributable to his past history. It is within the Board's province to resolve any apparent conflicts in the medical evidence. See *Marconi v. Chicago Heights Police*

*Pension Board*, 225 Ill. 2d 497, 540 (2006) (noting that when faced with conflicting evidence, the administrative agency assesses the credibility of the documentary information and the witness's testimony to determine the weight to place on the evidence); *Swanson*, 2014 IL App (1st) 130561, ¶ 31 (affirming the Board's determination that the plaintiff was not disabled as a result of on-duty activities, where multiple doctors offered conflicting opinions as to the cause of disability). "If the record contains evidence to support the agency's decision, that decision should be affirmed." *Marconi*, 225 Ill. 2d at 534. This record contains such evidence. We therefore find that the Board's factual determination that plaintiff was not disabled due to the physical injuries and concussion he sustained from the motor vehicle accident was not against the manifest weight of the evidence.

¶ 57    We also conclude that the manifest weight of the evidence supported the Board's factual finding that plaintiff's then-current inability to perform his duties as a police officer stemmed from his years-long history of substance abuse and anxiety predating his appointment as an officer and were not derivative from the concussion or pain medication after the accident. Plaintiff claimed mental capacity disability due to purportedly having "developed serious psychological problems after the accident." However, he failed to sustain his burden to establish a link between the traffic accident and any such disability. *Wade*, 226 Ill. 2d at 505. Rather, sufficient evidence in the record supports the opposite conclusion.

¶ 58    The record shows that independent examiner Dr. Agarwal found that plaintiff was unfit for duty as a police officer at the time of the examination because of the severity of his substance abuse disorder. Dr. Agarwal opined that plaintiff "more than likely suffered from substance use disorder prior to becoming a police officer." The record also shows that Dr. Agarwal's conclusions

were supported by the medical records documented prior to plaintiff filing his application for disability benefits. For example, plaintiff reported to Dr. Pieroth that he had been treated for anxiety since childhood and had a history of head injuries, all sustained prior to his assignment as a police officer. One of the head injuries was severe enough to cause defendant amnesia regarding the preceding three days and another caused paralysis on his left side for approximately five hours.

¶ 59 Additionally, plaintiff reported to Dr. Kroll that he was an alcoholic since the age of 11, and reported to Dr. Hirsch that he suffered from anxiety from age 6 and had used cocaine for 18 years. When plaintiff underwent a fitness-for-duty evaluation, plaintiff acknowledged to Dr. Wamstat his history of cocaine dependency. Thus, based on the evidence, we find the Board's factual determination that any claimed mental capacity disabilities were not a result of the motor vehicle accident but rather existed prior to plaintiff becoming a police officer was not against the manifest weight of the evidence. See *Siwinski*, 2019 IL App (1st) 180388, ¶¶ 25, 27. (manifest weight standard); *Miller v. Board of Trustees of Oak Lawn Police Pension Fund*, 2019 IL App (1st) 172967, ¶¶ 65-68 (affirming Board's finding of ineligibility for mental health related disability benefits, where multiple medical examiners found the officer was not disabled from an act of duty, and the officer concealed vital information from the one doctor who opined in his favor).

¶ 60 We note that, in reaching its factual determinations that plaintiff was not disabled and any mental health disorders preexisted plaintiff's appointment as a CPD officer, the Board placed no weight on his hearing testimony. The Board found plaintiff's testimony not credible, noting that "[t]he record is replete with evidence that [he] engaged in a systematic pattern [of] misrepresentation and obfuscation of the facts, in order to obtain benefits."

¶ 61    The Board was not required to believe plaintiff's self-serving testimony over medical professionals who examined plaintiff, and the record supports a finding that plaintiff either did not always testify truthfully or selectively withheld information. See *Miller*, 2019 IL App (1st) 172967, ¶ 41 (upholding the Board's finding that the officer's testimony lacked credibility, where the record contradicted his testimony and showed the officer had received counseling prior to his allegedly disabling acts). It was the Board's role to weigh the evidence and determine plaintiff's credibility, and we will not substitute the Board's judgment with our own. *Swanson*, 2014 IL App (1st) 130561, ¶ 31. We therefore will not overturn the Board's factual finding that plaintiff was not a credible witness.

¶ 62    We conclude that the manifest weight of the evidence supported the Board's factual finding that any of plaintiff's symptoms rendering him unable to perform his duties as a police officer were not the result of the motor vehicle accident but, rather, were attributable to anxiety and a history of substance abuse predating his appointment as a police officer. Because plaintiff's current inability to perform his duties as an officer stemmed from conditions preexisting his appointment as an officer, the Board properly determined plaintiff could not be eligible to receive either duty or ordinary disability benefits. See 40 ILCS 5/5-157(e) (West 2020).

¶ 63                                  III. CONCLUSION

¶ 64    For the foregoing reasons, we reverse the circuit court's order that reversed the Board's decision to deny plaintiff disability benefits under the Code and affirm the Board's decision finding plaintiff ineligible for disability benefits.

¶ 65    Circuit court judgment reversed.

¶ 66    Board decision affirmed.